1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11 | JOSE RODRIGUEZ, on behalf of himself and ) Case No.: 1:14-cv-1137-LJO-EPG
   | of all others similarly situated,       )
12 |                                          )
   |              Plaintiffs,                 ) FINDINGS AND RECOMMENDATIONS
13 |                                          ) REGARDING : (1) PLAINTIFFS' MOTION FOR
   |       v.                                 ) FINAL APPROVAL OF CLASS ACTION
14 |                                          ) SETTLEMENT and (2) PLAINTIFFS' MOTION
   | KRAFT FOODS GROUP, INC., a Virginia      ) FOR ATTORNEYS' FEES, COSTS, EXPENSES
15 | corporation, and DOES 1 through 100,     ) AND CLASS REPRESENTATIVE INCENTIVE
   | inclusive,                               ) AWARDS
16 |                                          )
   |                                          )
17 |                                          )
   |              Defendant.                  )
18 |                                          ) (Doc. 51 and 52)
   |                                          )
19 |_____)

20      **I.      Introduction**

21           On May 6, 2016, Jose Rodriquez, on behalf of himself and of all others similarly situated

22   ("Plaintiffs") filed a Motion for Final Approval of the Class Action Settlement (Doc. 51) and a Motion

23   for Attorneys' Fees, Costs and Expenses, and Class Representative Incentive Awards.  (Doc. 52).  No

24   opposition was filed by the Kraft Foods Group Inc. (now known as Kraft Heinz Food Company)

25   ("Defendant" or "Kraft Heintz"), or any class member.  The Court held hearings on Plaintiffs' Motion

26   for Final Approval of Class Action Settlement on July 7 and September 2, 2016.[1]  (Docs. 56 and 64).

27   _____

28   [1] Two hearings were held because, as described more fully below, two separate mailing to class members were mailed out.
     (Docs. 53 and 55).

R. Duane Westrup personally appeared on behalf of the Plaintiffs, and Douglas Farmer personally appeared on behalf of the Defendant at both hearings.  No class members were present at either hearing and no objections to the settlement were filed. (Docs. 56 and 64).  The Court heard arguments on a number of issues regarding the fairness of the settlement at the July 7, 2016 hearing, and requested additional briefing on several issues. (Doc. 57).  Plaintiffs' counsel submitted supplemental briefing on July 22, 2016. (Doc. 58).

Having carefully considered the parties' submissions, oral arguments, and the entire record in this case, the Court recommends that: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement be GRANTED; and (2) Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses and Class Representative Incentive Awards be GRANTED IN PART AND DENIED IN PART.  (Docs. 51, 52, 54, 58, and 61).

**II**.      **Background**

On June 5, 2014, Plaintiffs initiated this wage and class action against Kraft Foods Group Inc. in the Fresno County Superior Court alleging class-wide claims for: (1) Failure to Provide Meal and Rest Periods (Labor Code §§ 226.7, 512); (2) Failure to Timely Pay Wages (Labor Code §§ 201-204); (3) Failure to Maintain Pay Records and Provide Accurate Itemized Statements (Labor Code §§ 226, 1174); and (4) Unfair/Unlawful/Fraudulent Business Practices (California Business & Professions Code §§ 17200, *et seq*).  Defendant removed the case to this Court on July 18, 2014. (Doc. 1). Plaintiffs filed a First Amended Complaint ("FAC") on September 19, 2014, alleging the same causes of action, and also added an additional claim for Enforcement of the Private Attorney General Act (Labor Code § 2698) ("PAGA"). (Doc. 14).  The FAC is the operative pleading in this action. Defendant answered on October 20, 2014.  (Doc. 16).

On September 25, 2016, the parties filed a notice of settlement after previous attempts at settling the case with a mediator were unsuccessful. (Doc. 30).  The Court granted preliminary approval of the class settlement on March 4, 2016. (Docs. 48-50).  Pursuant to the order, a Notice of Proposed Class Action Settlement ("notice") was mailed out to 1,005 class members on April 12, 2016.  *Declaration of Carole Thompson* ("*Thompson Dec'l I*"), dated June 14, 2016 at pg. 3, ¶¶ 5, 7 (Doc. 54, pg. 3, ¶¶  5, 7; Doc. 53, pgs., 7-10).  Plaintiffs filed the instant motions seeking final

2

approval of the class on May 6, 2016. (Docs. 51-52).  On June 14, 2016, counsel, via stipulation, advised the Court that they had become aware of several additional class members who had not received the notice.  (Doc. 53, pg.2: 21-25). On June 15, 2016, the deadline for mailing out additional notices to these class members was extended. (Doc. 55, pg. 5).  An additional 236 class members were mailed the notice on June 22, 2016. (Doc. 53, pgs. 12-15; Doc. 61, pg. 2, ¶ 4). After the two distributions, the total mailing list and class consisted of 1,241 members. (Doc. 61, pg. 2, ¶ 3).

### III.    Terms of the Settlement and Distribution

The class is comprised of all persons, who were employed by Kraft Heinz in California as hourly paid production employees at any time between June 5, 2010, through March 3, 2016 ("the covered time frame"). (Doc. 35-2, pg. 14, ¶ 2; Doc. 53, pg. 2:9-13).  The class alleges Defendant failed to provide duty free lunch and rest periods as required by law during this period. (Doc. 14, pgs. 6-7). Plaintiffs contend that these alleged violations resulted in unpaid wages, unfair business practices, and a failure to provide accurate wage statements in violation of California wage and hour laws. (Doc. 14 at pgs. 8-19).

Under the terms of the settlement, the total settlement amount is $1,750,000.00, without a reversion.  (Doc. 25, pgs. 21-22; Doc. 35-2, pgs. 3- 8 and 18-20).  The settlement includes attorney fees to be paid to class counsel up to $583,275.00 (33.33% of the total settlement amount); up to $15,000.00 in costs and expenses; a class representative payment in the amount of $10,000.00; a claims administration payment in the amount of $15,000.00 to be paid to CPT Group Inc.; and a PAGA payment of approximately $7,500.00 that will be distributed as follows : 75% (approximately $5,625.00) to be paid to the Labor and Workforce Development Agency, and the remaining 25% (approximately $1,875.00) to be paid on a *pro rata* basis to class members. (Doc. 25, pgs. 21-22). After these deductions, the net settlement amount will be approximately $1.13 million dollars. (Doc. 35-2, pg. 3).

The settlement agreement provides that payments will be made to all class members (who did not request to be excluded) from the $1.13 million net settlement amount on a *pro rata* basis. ("claimants").  The payments will be allocated using the following work shifts credit formula:

(a) Each claimant will receive one point for each work shift employed during the covered time frame;

(b) Claimants who separated during the covered time frame will receive two additional points to compensate them for their waiting time penalty claim; and

(c) The claims administrator will total the points of all claimants, and divide the total points into the amount of the payout fund, to determine a dollar amount per point. Each claimant will receive his or her *pro rata* share of the payout amount, based on the claimants' points and corresponding dollar amounts per point, until the fund is exhausted. (Doc. 35-2, pgs. 19-20 ¶¶ (g) and (h); Doc. 58, pg. 15).

## IV.     Final Approval of the Settlement Agreement

### A.     *Legal Standard for Rule 23 Class Action Settlement*

"There is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (citation and internal quotation marks omitted). However, "[t]he claims, issues, or defenses of a certified class may be settled … only with the court's approval" "after a hearing and on a finding that it is fair, reasonable, and adequate." Fed. Civ. P. 23(e). When a settlement is reached by the parties prior to certification of a class, the court must confirm "the propriety of the [class] certification and the fairness of the settlement" to protect the absent class members.  *Stanton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003); *In re Bluetooth Headset Prods. Liab. Litig*. ("*In re Bluetooth*"), 654 F.3d 935, 946 (9th Cir. 2011) (When settlements are reached prior to certification "an even higher level of scrutiny" is required to determine the fairness of the agreement.); *In re Mego Fin. Corp. Sec. Litig.* ("*In re Mego*"), 213 F.3d 454, 458 (9th Cir. 2000)(same).

The Rule 23 class settlement process generally proceeds in two phases. In the first phase, the court conditionally certifies the class, conducts a preliminary determination of the fairness of the settlement (subject to a more stringent final review), and approves the notice to be imparted upon the class. *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014). The purpose of the initial review is to ensure that an appropriate class exists and that the agreement is non-collusive, without obvious

4

deficiencies, and within the range of possible approval as to that class. *See, True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010); Newberg on Class Actions § 13:13 (5th ed. 2014).

In the second phase, the court holds a full fairness hearing where class members may present objections to class certification, or to the fairness of the settlement agreement. *Ontiveros*, 303 F.R.D. at 363 (citing *Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989). Following the fairness hearing, taking into account all of the information before the court, the court must confirm that class certification is appropriate, and the settlement is fair, reasonable, and adequate. *See Valdez v. Neil Jones Food Co.*, 2015 WL 6697926 * 8 (E.D. Cal. Nov. 2, 2015); *Miller v. CEVA Logistics USA, Inc.*, 2015 WL 4730176, *3 (E.D. Cal. Aug. 10, 2015).

### B. *Sufficiency of the Notice*

Before a proposed settlement is approved, Rule 23(c)(2)(b) and (e)(1) require that the Court ensure that notice is directed in a reasonable manner to all class members, and that such notice provides the necessary information to make an informed decision regarding participation in the action. In this instance, the Court made several revisions to the notice, and approved the mailing procedures as set forth in the settlement agreement. (Doc. 35-2, pgs. 22-24, ¶¶ 40-47; Docs. 40, 45, 48 and 50). These procedures have been carried out by the settlement administrator, CPT Group, Inc. *Thompson Dec'l I* and *Declaration of Carole Thompson* dated August 31, 2016 ("*Thompson Dec'l II*") (Docs. 54 and 61).

A review of the notice reveals that it satisfies the requirements of Due Process. (Doc. 53, pgs. 7- 15). In particular, the notice provided a summary of the litigation and described the key terms of the settlement agreement outlined above. It also advised class members about the submission of claim forms, the calculation of individual settlement payments, class members' options under the settlement agreement - including an appeals process regarding the award calculation, and class members' abilities to submit objections to approval of the settlement. (Doc. 53, pgs. 7-15).

According to the CPT's claims administrator's declarations (Docs. 54 and 61), 1,241 class members were sent class notices. *Declaration of Carole Thompson II*, at pg. 2, ¶ 3 (Doc. 61, pg. 2, ¶ 3). Prior to sending the notices, CPT conducted a National Change of Address Search to update the class member mailing list. As a result, CPT was able to locate 71 new addresses. *Thompson Dec'l I*, at

5

pg. 3, ¶ 6 (Doc. 54, pg. 3, ¶ 6 ).  As of June 14, 2016, 34 class action packets were returned as undeliverable, 6 had forwarding addresses, and a skip tracing search was performed on the remaining returned addresses. *Id*. at ¶ 8. As of June 14, 2016, 12 packets remain undeliverable with no forwarding addresses located through skip trace. *Id*.

After the second mailing, of the 1, 241 class members mailed notices, 34 valid requests for exclusions were received, including 1 late request for an exclusion, and 1 deficient request for exclusion from the additional mailing.  (Doc. 61, pg. 2, ¶ 6).  Accordingly, 1,207 class members will be sent a settlement payment, which represents a 97.26% participation rate. (Doc. 61, pg. 2 ¶ 6).  The estimated settlement payments range from $1.49 to $2,249.11 per participating class member, with an average payment of $928.83. (Doc. 61, pg. 2, ¶ 7).  Given the high percentage participation rate, the Court is satisfied that sufficient notice was given.

### C.    Rule 23 Class Certification

Federal Rule of Civil Procedure 23governs court approval of class action settlements. "[I]n the context of a case in which parties reach a settlement agreement prior to class certification, the Court must peruse the proposed compromise to ratify by the propriety of the certification and the fairness of the settlement." *Stanton*, 327 F. 3d at 953.  Class certification requires a showing of two sets of requirements. First, Rule 23(a) requires a showing of numerosity, commonality of law or fact, typicality of the representative plaintiff's claims, and adequacy of representation. Fed. R. Civ. P. 23(a). Second, the action must fit within one of the "types of actions" set forth by Rule 23(b). Fed. R. Civ. P. 23(b).

#### 1.    Rule 23(a) Requirements

##### a.    Numerosity

A class need only be so numerous that joinder of all members individually is impracticable. Fed. R. Civ. P. 23(a)(1).  Here, the class is comprised of 1,207 individuals which would make joinder difficult.  Given this large number, the numerosity factor has been satisfied.  *See*, *e.g. Jordan v. L.A. Cnty.*, 669 F. 2d 1131, 1319 (9th Cir. 1982) (indicating that class size of 39, 64, and 74 are sufficient to satisfy the numerosity requirement), vacated on other grounds, 459 U.S. 810 (1982).

///

b.   Commonality

Rule 23(a) also requires the existence of  "questions of law or fact common to the class." Commonality exists when there is either a common legal issue stemming from divergent factual predicates, or a common nucleus of facts resulting in divergent legal theories. *Hanlon v. Chrysler Corp. ("Chrysler Corp."),* 150 F.3d 1011, 1019 (9th Cir. 1998). In other words, commonality is generally satisfied where, as in this case, "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis,* 275 F.3d 849, 868 (9th Cir. 2001), abrogated on other grounds by *Johnson v. California,* 543 U.S. 499, 504-05 (2005). As clarified in *Wal-Mart Stores, Inc. v. Dukes,* a plaintiff must demonstrate that the class members "have suffered the same injury" and that their claims "depend upon a common contention . . . of such a nature that is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." __ U.S. __, 131 S. Ct. 2541, 2551 (2011) (internal citation omitted).

Here, Plaintiffs challenge Kraft Heinz's meal and rest policies at five facilities under the common theory that employees were not provided with duty-free meal periods of not less than thirty continuous minutes in length before the end of the fifth hour of work.  Although the case involved five different sites, the class asserts identical claims arising under California law, and the legal questions are common to all class members.  Specifically, each class member asserts that Kraft Heinz's policies of denying meal and rest periods were illegal. As a result, factual and legal questions relevant to Defendant's break liability can be resolved on a class-wide basis.  For example, some questions include:

(i) Is Kraft Heinz's uniform practice of failing to provide duty-free meal and rest breaks to hourly paid production employees unlawful under Labor Code §§ 226.7 and 512 ?

(ii) Does Kraft Heinz's failure to comply with the Labor Code represent an unlawful business practice which violates Business and Professions Code § 17200 *et seq.*?

Likewise, the amount of damages owed to each class member are best adjudicated on a class wide basis since class members were allegedly subjected to the same employment and compensation policies and practices.

### c.  Typicality

Typicality exists when "the claims or defenses of the representative are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality . . . is said . . . to be satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868. Under the Rule's "permissive standards," representative claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, Kraft Heinz employed Plaintiff, Jose Rodriguez, as an hourly paid production employee in California within the class period.  Plaintiff's official job title was production technician. *Declaration of Jose Rodriguez* ("*Rodriguez Dec'l*") dated January 6, 2016 (Doc. 42, pgs. 2-3). Consequently, Plaintiff was subjected to the same Kraft Heinz's policies, practices and expectations regarding timely meal and rest breaks applicable to all hourly paid production employees who are in the class.  Thus, the typicality requirement is met.

### d.  Adequacy of Representation

The adequacy requirement is met if the class representative and class counsel "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Two questions are normally asked to determine adequacy: "(1) do the named plaintiff[] and [his] counsel have any conflicts of interest with other class members, and (2) will the named plaintiff[] and [his] counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Because Plaintiff and the class have been injured by the same conduct and seek to recover the same damages, there is no indication that any conflict exists between Plaintiff and the class. Similarly, there is no indication that class counsel has any conflict of interest with the class.  Finally, the named plaintiff and class counsel have diligently pursued relief in this action and have arrived at a favorable settlement, as discussed in more detail below.  Therefore, the adequacy requirement is met.

Given the above, all of the Rule 23(a) requirements are satisfied.

///

///

///

8

2.   *The Rule 23(b) Requirements*

a.   Predominance and Superiority

In addition to meeting the requirements of Rule 23(a), to be certified, a class must also meet at least one of the requirements of Rule 23(b). Pursuant to Rule 23(b)(3), a class action may be maintained if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Certification under Rule 23(b)(3) is appropriate whenever the interests of the parties can be served best by settling their differences in a single action.  Courts refer to the requirements of Rule 23(b)(3) as its "predominance" and "superiority" requirements. *AmchemProducts, Inc. v. Windsor*, 117 S. Ct. 2231, 2246 (1997).

As to the requirements of Rule 23(b)(3), the Court finds that common issues predominate over individual issues.  In particular, Defendant's policies and practices apply class-wide, and resolution through a single class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Other alternatives to a single class action, such as individual complaints filed with Labor and Workforce Development Agency, would have been ineffective in addressing the issues on a class-wide basis. In sum, the Rule 23(b)(3) predominance and superiority requirements are satisfied.

For the reasons set forth above, the Settlement Class meets the class-certification requirements of Rule 23(b)(3).

D.   *The Proposed Settlement is Fair, Reasonable, and Adequate*

A proposed class action settlement may be approved if the Court, after class members have an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P.

23(e)(2); *Rodriguez v. West Publ'g Corp*., 564 F. 3d 948, 963 (9th Cir. 2009).  In conducting a fairness determination pursuant to Rule 23(e), the Court considers: "(1) the strength of the plaintiff's case, (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant[2]; and (8) the reaction of the class members to the proposed settlement." *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 944 (9th Cir. 2015) (quoting, *inter alia*, *Churchill Village L.L.C. v. Gen. Elec*., 361 F.3d 566, 575 (9th Cir. 2004)). When settlement occurs before class certification, the court must also take extra care to ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth*, 654 F.3d at 946.

### 1.  The Strength of Plaintiffs' Case

The initial fairness factor addresses Plaintiffs' likelihood of success on the merits and the range of possible recovery.  *See Rodriguez*, 563 F.3d at 964-965.  In determining the probability of the plaintiffs' success on the merits, there is no "particular formula by which that outcome must be tested."  *Id*. at 965.  Instead, the court's assessment is based on "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Service Com'n of City and Cty. of S.F*., 688 F.2d 615, 625 (9th Cir. 1982) (citation and quotation marks omitted).  The court is not required to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of the outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id*. Rather, the court may presume that, through negotiation, the parties, their counsel, and the mediator arrived at a reasonable range of settlement by considering Plaintiffs' likelihood of recovery.  *See Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ").

Here, Plaintiffs' meal and rest period claims would most certainly face challenges.  Based on legal uncertainties regarding class certification in wage and hour cases, even a relatively strong case on the merits may not satisfy the standards for certification given recent case law including *Wal-Mart*

---

[2] The Court's analysis will not include this factor since a governmental agency is not a party in this action.

*Stores, Inc.*, ___ U.S. ___, 131 S. Ct. at 2451.   Additionally, as discussed in more detail below, Plaintiffs faced challenges with regard to their substantive claims.   For example, Plaintiffs would argue that they could prevail at class certification and on liability as Defendant's meal period policy and practice did not comply with the law.   Defendant, on the other hand, would assert that individualized issues preclude class certification.

    2.   *The Risk, Expense, Complexity, and Likely Duration of Further Litigation*

        The risk, expense, complexity, and likely duration of further litigation are also factors that consider "the probable costs, in both time and money, of continued litigation."   *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002).   Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."   *DIRECTV, Inc.*, 221 F.R.D. at 526 (citation omitted).   Moreover, settlement is encouraged in class actions where possible.   *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which present serious problems of management and expense.").

        Plaintiffs argue that this case is factually and legally complex and challenging.   For instance, they contend that during litigation, Kraft Heinz produced evidence indicating that its five facilities utilized different shift scheduling procedures, and therefore the meal period policies and procedures were not uniformly applied to all putative class members. Although Plaintiffs deposed corporate designees at each Kraft Heinz facilities, additional testimony would be necessary since some of the policies and practices changed over the course of time. Defendant also contends that the job titles and duties of nonexempt hourly paid employees varied at different locations, and included positions that fall outside of "production" work. Furthermore, collective bargaining agreements and meal waivers applied to some of the facilities. The number of employees and the enormous amount of data that Plaintiffs would have had to analyze would have been extensive.   Further factual inquiries would have been needed for certification and at the time of trial. The work involved in assessing these questions is

significant. *Declaration of R. Westrup* (*Westrup Dec'l*) dated May 6, 2016 ¶¶ 5-6; (Doc. 51, pgs. 8-9; Doc. 51-2, pgs. 3-4).

In addition, Plaintiffs filed this action at a time when there was substantial uncertainty concerning the law applicable to the meal and rest period claims asserted in the complaint, including the issue over whether statistical data may be used to establish liability and calculate damages.  Kraft Heinz would have likely argued that the case could not be certified because of the factual differences among policies and procedures instituted at its facilities.  Moreover, establishing liability would require individual testimony as to why a class member took a late or short meal period, or skipped it altogether. *Id.*

Given the length, complexity, and number of issues involved in both class certification and at trial, it is possible the case would not be certified and/or that a jury may not reach a unanimous verdict on all issues. Furthermore, even if the jury did reach unanimous verdicts, an appeal is likely. Avoiding a possible negative ruling as to certification, trial, and subsequent appeals in this complex case, strongly militates in favor of settlement rather than further protracted and uncertain litigation.  By participating in the settlement, class members have an opportunity for an immediate, guaranteed payout now in lieu of the possibility of an uncertain recovery that will take months, if not years, to achieve. Those facts weigh in favor of settlement. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (noting with respect to class action settlements: the "[c]ourt shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush.'").

### 3.  The Risk of Maintaining Class Action Status Throughout the Trial

Because the Court is not aware of any risks to maintaining class-action status throughout trial, this factor is neutral.  *See In re Veritas Software Corp. Sec. Litig.*, 2005 WL 3096079, at *5 (N.D. Cal. Nov. 15, 2005) (vacated in part on other grounds, 496 F.3d 962 (9th Cir. 2007)) (favoring neither approval nor disapproval of settlement where the court was "unaware of any risk involved in maintaining class action status"); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (C.D.

Cal. 2010) (finding that there were no facts that would defeat class treatment, the factor was considered "neutral" for purposes of final approval of class settlement).

### 4.  The Amount Offered in Settlement

To determine whether that settlement amount is reasonable, the Court must consider the amount obtained in recovery against the estimated value of the class claims if successfully litigated. *Litty v. Merrill Lynch & Co., Inc.*, 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015) (quoting *In re Mego*, 213 F.3d at 459); *see also Officers for Justice,* 688 F.2d at 628 (9th Cir. 1982) ("[A] cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.")

Here, the gross settlement amount is $1,750.000.00, of which approximately $1,130,000.00 will be distributed to the class.  There is no reversion, so all of the money in the net settlement amount will be distributed to class members.  97.26% of all potential class members will receive a payment. The estimated settlement payments range from $1.49 to $2,249.11 per participating class member, with an average payment of $928.83 per participating class member. (Doc. 61, pg. 2, ¶¶ 6, 7).  The settlement amount that will actually be disbursed to the class members is approximately 64% ($1,130,000.00 divided by $1,750,000.00 ) of the predicted maximum recovery amount.  That settlement amount is above the acceptable range. *See, e.g., Millan v. Cascade Water Services, 2016 WL 3077710 * 7* (E.D. Cal. June 2, 2016) (approving settlement with 25 percent of  proceeds going to class members); *Garnett v. ADT, LLC*, 2016 WL1572954, *7 (E.D. Cal. Apr. 19, 2016) (approving a settlement agreement with a class payment of roughly 21 percent of the maximum potential recovery amount); *Rosales v. El Rancho Farms*, 2015 WL 4460918, at *14 (E.D. Cal. July 21, 2015) (25 percent).  Given the above, this factor supports approval of the settlement.

### 5.  The Extent of Discovery Completed and the Stage of the Proceedings

Courts require that parties conduct sufficient discovery to be able to make an informed decision about the value and risks of the action and come to a fair settlement. *See, Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." DIRECTTV, 221 F.R.D. at 528.  What is required is that "sufficient discovery has been taken or investigation completed to enable counsel and

1   the court to act intelligently."  Herbert B. Newberg, Newberg on Class Actions sec. 11.41 (4th ed.

2   2013).

3            In this matter, settlement came only after class counsel conducted a sufficient amount of

4   investigation and discovery to allow counsel and the Court to act intelligently.  For example, Plaintiffs

5   propounded discovery, took depositions of Kraft Heinz's corporate designees, examined documents

6   and data, reviewed class members' records, met with and interviewed class members, consulted with

7   experts, prepared a damage analysis, participated in a full-day mediation in San Francisco with a

8   respected mediator, engaged in post-mediation discussions, and evaluated additional information from

9   Kraft Heinz.  *Westrup Dec'l* dated May 6, 2016 ¶ 8 (Doc. 51,pgs. 11-12; Doc. 51-2, pgs. 5).  This

10  factor militates in favor of adopting the settlement.

11                        *6.   The Experience and Views of Counsel*

12           The Court must consider the experience and views of counsel regarding the settlement.

13   *See Churchill Vill*., 361 F.3d 575.  Class counsel is an experienced litigator who has been practicing

14  law for over forty years and has specialized in class action litigation during that time. *Westrup Decl*. at

15  ¶ 11 (Doc. 51-2, pgs. 6-7).  Class counsel recommends settlement. Although this factor is not afforded

16  much weight,[3] it does weigh in favor of settlement.

17                        *7.   The Reaction of the Class Members*

18           In determining the fairness of a settlement, the Court should consider class member objections

19  to the settlement and the claims rate. *See Larsen v. Trader Joes Co*., 2014 WL 3404531, *5 (N.D. Cal.

20  July 11, 2014). The absence of a large number of objections to a proposed settlement raises a strong

21  presumption that the terms of the agreement are favorable to the class. *Richardson v. THD At-Home*

22  *Services, Inc.*, 2016 WL 1366952, *6 (E.D. Cal. Apr. 6, 2016) (citation omitted). Here, 1,241 notice

23  packets were delivered, objections were filed, and only 34 employees (2.74 percent) requested to be

24  excluded.  There is no evidence to indicate that any class member is dissatisfied with the proposed

25

26

27  ───────────────
[3] "Although a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court

28  should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable
    endorsement." *Smith v. American Greetings Corp*., 2016 WL 2909429, *5 n. 5 (N.D. Cal. May 19, 2016) (quoting
    Principles of the Law of Aggregate Litigation § 3.05 comment (a) (2010)).

settlement. The reaction of the class members and class representative to the settlement has been positive. This factor weighs in favor of settlement.

### 8. Absence of Collusion

"Although a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." *Smith v. American Greetings Corp.*, 2016 WL 2909429, *5 n 5 (N.D. Cal. May 19, 2016) (quoting Principles of the Law of Aggregate Litigation § 3.05 comment (a) (2010)).

In this instance, the settlement was presented to the Court after the parties had engaged in a full day mediation. *Westrup Dec'l* at ¶ 5 (Doc. 51-2, pg. 5). The parties did not settle at mediation, however, counsel continued settlement discussions and were eventually able to come to a resolution. *Id*. The terms of the settlement are now in the settlement agreement. The Court is satisfied that this settlement agreement is not a product of collusion. This factor weighs in favor of approval of the settlement agreement.

### 9. Conclusion

Given all of the reasons listed above, the Court finds the negotiated settlement represents a fair, reasonable and adequate resolution as required by Rule 23. Accordingly, final approval of the settlement agreement is recommended.

## V.    Fees, Costs, and Representative Service Payment

Plaintiffs' counsel moves for an award of attorneys' fees, costs and expenses, a payment to the class administrators, as well as a class representative service payment for the class representative. Specifically, Plaintiffs request attorneys' fees in the amount of $583,275.00 amounting to 33.3 percent of the gross fund value. Plaintiffs also request litigation costs in the amount of $13,507.84, and class management fees by the claims administrator in the amount of $15,000.00. Finally, Plaintiffs request a representative service award of $10,000.00. It is recommended that Plaintiffs' motion for fees (Doc.52) be granted in part and denied in part as set forth below.

///

///

### A.   Attorneys' Fees

Rule 23(h) permits the court to "award reasonable attorney's fees and nontaxable costs" in a class action when they "are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  In diversity actions, such as this one, federal courts apply state law to determine the right to fees and the method for calculating fees. *See Mangold v. Cal. Public Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995); *see also Hartless v. Clorox Co*., 273 F.R.D. 630, 642 (S.D. Cal. 2011).

Under California law, "when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorneys' fees out of the fund." *Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977).  A common fund results when "the activities of the party awarded fees have resulted in the preservation or recovery of a certain or easily calculable sum of money—out of which sum or 'fund' the fees are to be paid." *Id*. at 35.  Here, the settlement agreement creates a gross settlement amount, i.e., a common fund, out of which reasonable attorneys' fees will be paid.

California courts employ two methods when calculating a reasonable award of attorneys' fees in common fund actions. *See Lealao v. Beneficial Cal., Inc*., 82 Cal. 4th 19, 27 (2000). The first method calculates attorneys' fees based on a percentage-of-the-benefit bestowed upon the class. *Lealao*, 82 Cal. 4th at 26 ("Percentage fees have traditionally been allowed in such common fund cases, although, as will be seen, the lodestar methodology may also be utilized in this context."). The second method utilizes a lodestar, which is determined by multiplying the hours counsel reasonably expended by a reasonable hourly rate, which may then be enhanced by a multiplier. *Id*.  Regardless of the method, "[t]he ultimate goal ... is the award of a 'reasonable' fee to compensate counsel for their efforts, irrespective of the method of calculation .... It is not an abuse of discretion to choose one method over another as long as the method chosen is applied consistently using percentage figures that accurately reflect the marketplace." *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557 (2009).

Similarly, under federal law, even if the parties agree on the amount of a fees award, a district court has an obligation to consider the fee award in the context of the settlement agreement to ensure that it is reasonable. *See In re Bluetooth*, 654 F.3d at 941. Where the settlement agreement creates a

common fund, a "district court 'has the discretion to apply either the lodestar method or the percentage-of-the-fund method in calculating the fee award.'" *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. May 11, 2016) (quoting *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002)).  Despite the discretion afforded to the court, the Ninth Circuit recommends that district courts cross-check the award by applying a second method. *In Re Bluetooth*, 654 F.3d at 944-945.  California courts also use the cross-check method in order to confirm whether an award is reasonable and accurately reflects the market place.  *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 557.

### 1.   Percentage of the Fund Method

Here, Plaintiffs' counsel is requesting $583,275.00 in attorneys' fees.  Since both California and federal law utilize similar methods for calculating attorneys' fees, the Court will apply the percentage-of-the-fund method and cross-check by calculating the lodestar. Under federal law, the "benchmark" award under the percentage-of-the-fund method is twenty-five percent of the fund. *Stetson*, 821 F.3d at 1165; *In re Bluetooth*, 654 F.3d at 942.  However, a district court may "adjust upward or downward to account for any unusual circumstances involved in the case." *Stetson*, 821 F. 3d at 1165; *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F. 2d 1301, 1311 (9th Cir. 1990).  Factors that would justify departure from the benchmark include: 1) the benefit obtained for the class, 2) the risk due to the complexity and novelty of the issues presented, 3) the risk of nonpayment, and 4) awards granted in similar cases.  *In Re Bluetooth*, 654 F.3d at 942 (citations omitted); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Chief among those considerations is the benefit to the class. *In re Bluetooth*, 654 F.3d at 942 (citing, *inter alia, Hensley v. Eckerhart*, 461 U.S. 424, 434-436 (1983)).

In this case, Plaintiffs' counsel seeks 33.33 percent of the gross fund amount in fees. That amount exceeds the federal benchmark.  In order to award that percentage of the gross fund, the Court must find that unusual circumstances justify the departure. Class counsel argues that the departure is justified because Plaintiffs' firm is comprised of very experienced litigators and faced formidable legal opposition.  Moreover, the case lasted over two years, posed complex legal and factual issues, and required extensive analysis even after attendance at a full-day mediation in order to settle the case.

(Doc. 52, pgs. 8-14).  The Court will analyze the relevant factors to determine if an upward departure is warranted.

### a.   Benefit to the Class

As noted above, when evaluating attorneys' fees, the Court looks to the benefit imparted upon the class.  Here, the average pay out to class members for failure to provide meal and rest breaks is $928.83.  These types of claims do not generally produce substantial damage awards.  Furthermore, the absence of any objections to the settlement supports finding that positive benefits to the class exist. *See DIRECTV, Inc.*, 221 F.R.D. at 529. This consideration weighs in favor of granting the requested fees award.

### b.   The Risks Involved

Next, the Court considers the risks involved with litigating this action.  As previously outlined, substantial risks were involved in obtaining class certification and a favorable judgment. This consideration weighs in favor of granting the requested fee award.

### c.   Contingent Nature of Representation/Risk of Non-payment

Class counsel litigated this on a contingency basis, which necessarily presents considerable risks. In considering both the nature of the work performed by class counsel, as well as the risk involved in the costs advanced, the Court finds that these factors support the fee award requested.  *See Graham v. Daimler Chrysler Corp.,* 34 Cal. 4th 553, 580 (2004) ("A contingent fee must be higher than a fee for the same services paid as they are performed.  The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services." ) (internal citations omitted).

### d.   Awards Made in Similar Cases

Finally, the 33.3 percentage award requested in this case is commensurate with percentage-of-the benefit awards made in other wage-and-hour actions in this district: *Millan v. Cascade Water Services*, 2016 WL 3077710 * 11-12 (E.D. Cal. June 6, 2016) (court approved attorneys' fees in the amount of 33 percent of the common fund); *Davis and Humphrey et al. v. Brown Shoe Company Inc*., 2015 WL 6697929 * 8 (E.D. Cal.  Nov. 23, 2015) (court approved attorneys' fees in the amount of 29.5 percent of the common fund); *Barbosa and Barrios v. Cargill Meat Solutions Corp*., 297 F.R.D.

431, 448-454 (E.D. Cal. July 2, 2013) (court approving attorneys' fee in the amount of 33 percent of the common fund)

### 2. The Lodestar Calculation

As previously noted, district courts often conduct a lodestar crosscheck to ensure that the percentage based fee is reasonable. *Yamada v. Nobel Biocare Holding AG*, 825 F. 3d 536, 546 (9th Cir. 2016); *Crawford v. Astrue*, 586 F.3d 1142, 1151 (9th Cir. 2009) (the district court may conduct a lodestar cross-check as an aid in assessing the reasonableness of the fee). Additionally, since Plaintiffs bring various state law claims, a lodestar calculation is appropriate since under California law, "[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1053 (2003) (internal quotation marks and citations omitted).

The lodestar amount is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Gonzales v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). To determine whether the lodestar is reasonable, the following factors may be considered: (1) the amount involved and the results obtained; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id*. at 1007, n. 7 (citing *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir.1975)).

### a. Reasonable Number of Hours

Class counsel spent approximately 763.4 hours litigating this matter and preparing the settlement. (Doc. 58, pg. 17). Counsel's time was expended by : (a) drafting and revising pleadings and other legal documents; (b) conferring with client and class members, opposing counsel, or both; (c) conducting legal research and writing; (d) preparing and responding to written discovery; (e) preparing, traveling to, and taking multiple (five in total) depositions of corporate designees in Fresno

19

and San Francisco as well as defending Plaintiff's deposition; (f) reviewing policy documents, manuals, and other document production items; (g) meeting with and/or corresponding with putative class members as well as with Plaintiff; (h) preparing for and traveling to court appearances including post-appearance time; (i) analyzing data, preparing for and attending mediation, (j) analyzing confidential statements and additional evidence from Kraft Heinz post-mediation regarding the viability of class certification; and (k) travel to and attendance at mediation, including months of post-mediation discussions and negotiations. *Westrup Dec'l* dated July 22, 2016 at ¶ 7 (Doc. 58-1, pg. 4). A review of the counsel's billing records reveals that the number of hours billed appear reasonable given the services provided. (Doc. 58-2, pgs. 1-44).

b.   Reasonable Rate

A district court is required to determine a reasonable rate for the services provided by examining the prevailing rates in the community charged by "lawyers of reasonably comparable skill, experience, and reputation." *Sanchez v. Frito Lay*, 2015 WL 4662636, *17 (E.D. Cal. Aug. 5, 2015) (quoting *Cotton v. City of Eureka*, 889 F.Supp.2d 1154, 1167 (N.D. Cal 2012)). Under federal and state law, generally, an attorney's hourly rate is to be calculated "according to the prevailing market rates in the relevant community" and should be in line with the rates prevailing in the community for similar services by lawyers of reasonably comparable skill and experience and reputation." *Shirrod v. Office of Workers' Compensation Programs*, 809 F. 2d 1082,1086 (9th Cir. 2015); *Graham v. DaimlerChrysler Corp*., 34 Cal. 4th 553 (Cal. 2004) (explaining that under state law, hourly rates are determined by comparable legal services in the community).  In civil litigation, the forum where the district court sits is the "relevant community."  *Id*. Thus, when a case is filed in the Fresno Division of the Eastern District of California, the hourly rate is compared against attorneys practicing in the Fresno Division of the Eastern District of California. *See, e.g*., *Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir. 2009).

In support of the reasonableness of the attorneys' hourly rate, Plaintiffs' counsel argues that his attorney fee rates of $700.00 and $525.00 per hour, have been accepted in the Northern and Southern Districts of California.  (Doc. 50, pgs. 16-22).  Class counsel has cited other cases in this district in

which these hourly rates were not reduced. (Doc. 52, pg. 17).  However, there was no compelling

argument made establishing how previous cases in this district are similar to the instant case.

Generally, judges in this district have determined that the hourly rate for competent and experienced

attorneys is between $250 and $400, "with the highest rates generally reserved for those attorneys who

are regarded as competent and reputable and who possess in excess of 20 years of experience." *Millan*,

2016 WL 3077710 * 7 (E.D. Cal. June 2, 2016); *see also*, *Rosales v. El Rancho Farms*, 2015 WL

4460918, at *24 (E.D. Cal. July 21, 2015); *Archer v. Gibson*, 2015 WL 9473409, *13-14 n. 6 (E.D.

Cal. Dec. 28, 2015) ("A current reasonable range of attorneys' fees, depending on the attorney's

experience and expertise, is between $250 and $400 per hour, and $300 is the upper range for

competent attorneys with approximately 10 years of experience."); *Silvester v. Harris*, 2014 WL

7239371, *4 (E.D. Cal. Dec. 17, 2014) (collecting cases).  The district court may rely on its knowledge

of, and experience with, the customary rates in the legal market in establishing a reasonable rate.

*Ingram v. Oroudjian*, 627 F. 3d 925, 928 (9th Cir. 2011).  Additionally, the fee applicant bears the

burden to establish that the requested rates are commensurate "with those prevailing in the community

for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v.

Stenson*, 104 S. Ct. 1541, 1547-1548 (1984).  Counsel has not done so here.  Therefore, the Court

finds that class counsel's hourly attorney rate should be discounted, as set forth below, to reflect

Fresno rates accordingly.

Moreover, paralegal rates within the Fresno Division of the Eastern District range between $75

to approximately $150.00. *See, Rosales*, 2015 WL 4460918 at *3 (observing that "$75 for paralegals

[is] reasonable for litigation performed in this district"); *Spence v. Wells Fargo Bank*, N.A., 2012 WL

844713 at *5 (E.D. Cal., Mar.12, 2012) (approving "paralegal or other support rates" of $125.00,

$145.00 and $155.00); *Silvester* 2014 WL 7239371 at *4 ("The current reasonable hourly rate for

paralegal work in the Fresno Division ranges from $75 to $150, depending on experience.").  The

Court notes that minimal information was provided by counsel regarding the years and experience of

the paralegal in this case. Accordingly, the Court will award $115.00 per hour, since it appears the

work was done by a senior paralegal, and this rate is in the middle of the suggested range and has been

used in other cases. *Green v. California Pride Inc.*, 2016 WL 3354340 at * 6 (E.D. Cal., June 6, 2016); *Moore v. Watkins et al.*, 2015 WL 5923404 at *6 ($115.00 per hour); *Gutierrez v. Onanion et al.*, 2012 WL 1868441 at * 2 ($115.00 per hour); *Delgado v. Mann Bros. Fuel Inc.*, 2010 WL 5279946 at *4 ($115.00 per hour).

Applying Fresno Division rates based on the $250-$400 range for attorneys' fees, and $115.00 for paralegal fees, the lodestar cross-check calculation is as follows:[4]

| Lawyer | Title | Years in law | Rate | Adjusted Fresno Rate | Hours | Fees |
|--------|-------|--------------|------|----------------------|-------|------|
| R. Duane Westrup | Partner | 40 | $700 | $400 | 89.5 | $35,800.00 |
| Cat N. Bulaon | Senior Associate | 14 | $525 | $350 | 371.8 | $130,130.00 |
| Ian Chuang[5] |  |  | $525 | $350 | 79.1 | $27,685.00 |
| Phillip R. Poliner | Partner | 21 | $525 | $350 | 110.2 | $38,570.00 |
| Senior Paralegal | Paralegal |  | $200 | $115 | 100.8 | $11,592.00 |
|  |  |  |  | **TOTAL** |  | **$243,777.00** |

The requested fees of $583,275.00 is significantly higher than the lodestar cross-check amount of $243,777.00. Accordingly, and the Court finds it appropriate to reduce the fee request. In doing so, the Court recognizes that the cross-check does not account for the time and expense associated with traveling to and appearing at the hearings on the final approval of the class action settlement on July 8, 2016, and the supplemental final hearing scheduled for September 2, 2016, as well as the time spent preparing the supplemental briefing regarding attorneys' fees requested by the Court. (Doc. 58, pgs. 12-13). The Court, however, will add these hours in when considering the multiplier evaluation.

In the initial briefing, Plaintiffs' counsel asserted that case law supports a multiplier in the 3-4 range. (Doc. 52, pgs. 15-16). Under federal law, a "lodestar multiplier" is calculated by dividing the percentage fee award by the lodestar calculation. *Fischel v. Equitable Life Assur. Society of U.S.*, 307

---

[4] The most recent number of hours worked was taken from a declaration provided by attorney Westrup on July 22, 2016. *Westrup Dec'l* at ¶7 (Doc. 58-1, pg. 4).

[5] Although information regarding the attorneys working on this case was summarized, a description of Mr. Chuang's position and years of experience were not provided to the Court. (Doc. 52-1, pgs. 6-7). However, an hourly billing rate of $350.00 appears reasonable based on his initial hourly rate of $525.00.

F.3d 997, 1008 (9th Cir. 2002).  Although the lodestar figure is presumptively reasonable, the Court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of "reasonableness" factors, including the quality of representation, the benefit to the class, the complexity and novelty of the issues presented, and risk of non-payment, with a party's success in the litigation being the most critical factor.  *Yamada*, 825 F. 3d at 546.  *Stetson*, 821 F. 3d at 1167 ("The district court also has discretion to adjust the lodestar upward or downward using a multiplier that reflects "a host of 'reasonableness' factors, including the quality of the issues presented, and the risk of nonpayment.  These factors are known as the Kerr factors.") (citations omitted).  Under California law, similar factors are used including: (1) the novelty and difficulty of the questions involved; 2) the skill displayed in presenting them; 3) the extent to which the nature of the litigation precluded other employment by the attorneys; and (4) the contingent nature of the fee award.  *Graham v. DaimlerChryler Corp*. 24 Cal. at 579.

In this case, after reducing the attorney hourly rates that are commensurate with Fresno rates, the multiplier would be 2.39, which is calculated by dividing $ 583,275.00 by $243,777.00.  The Court has already addressed several of the factors outlined above in this order and therefore, it need not explicitly reiterate its analysis here.  Notably, the Court acknowledges that class counsel undertook considerable financial risks in this litigation by accepting this case on a contingency basis. There was also no guarantee counsel would recoup fees or the substantial costs advanced.  The contingent nature of the representation has also resulted in class counsel litigating this matter for approximately two years without any compensation.  Finally as previously explained, counsel also achieved a good result and generated a favorable benefit for the class.  However, the Court finds a multiplier of 2.39 to be too high.  In doing so, the Court relies on the reasoning in *Stanton*, which provides as follows:

> In setting the amount of common fund fees, the district court has a special duty to protect the interests of the class. On this issue, the class's lawyers occupy a position adversarial to the interests of their clients. The reason for the usual insistence upon judge-conferred common fund fees is that, as we have explained, … Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be

closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper. *Stanton*, 327 F. 3d at 970 (internal citations and quotations omitted).

Here, although the settlement occurred later in the litigation, the amount of discovery taken was not substantial.  In fact, only a total of six depositions were taken (five of Defendant's witnesses, and one defense of Mr. Rodriquez).  Moreover, there is no evidence presented that the discovery was particularly onerous, and there was no discovery motion practice required. In fact, the only pre-trial motions that were required were the motions for preliminary approval and final approval of the class settlement. (Docs. 35, 51, 52).   Significantly, the Court had to have Plaintiffs' counsel revise the notice to class members several times because changes were not made pursuant to the Court's instructions (Docs. 40 and 45).   Furthermore, additional supplemental briefing at the final approval stage was ordered because some of Plaintiffs' pleadings lacked detail. In particular, the Court required that Plaintiff provide information related to the standards set forth in Rule 23, as well as supplemental information related to the attorneys' fee request, because this information was either lacking, or was only addressed in a general manner in the briefing supplied. (Doc. 57)

In the motion, Plaintiffs' counsel request a multiplier of 1.84. (Doc. 52, pg. 15:14-15).  Given the above considerations, the Court finds that the 1.84 multiplier is appropriate.  Applying the 1.84 multiplier to the $243,777.00 (the lodestar attorneys' fee rate), the amount of reasonable attorney fees is $448,549.69.  The Court notes that $448,549.69 is 25.6 percent of the total settlement amount of $1,750,000.00, which is consistent with the 25 percent federal benchmark that is awarded in class action lawsuits. *Stanton*, 327 F. 3d at 968.  Although this percentage is less than the 33.3 percent of the total fund requested, it is an appropriate award given the hours counsel expended, the Fresno hourly rates, the size of the class, the complexity of the issues presented, the overall success, the skill with which the case was prosecuted, the substantial legal risks associated with Plaintiffs' claims, and the financial risks borne by Plaintiffs' counsel.  Finally, the requested award would not "yield windfall profits for class counsel in light of the hours spent on the case." *In re Bluetooth*, 654 F. 3d at 942; *see also Custom LED, LLC, v. eBay Inc*., 2014 WL 2916871 at *9 (N.D. Cal. June 24, 2014).  In other words, the award is a reasonable fee that compensates counsel for their efforts, and is consistent with

24

the fees awarded in the marketplace. *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 557. Therefore, the Court will approve attorneys' fees in the amount of $448,549.69.

### 3. The Lien

On August 26, 2016, a Notice of Lien under Cal. Code of Civ. Pro. § 708.410 was filed by Nancy A Underwood (formerly Westrup), regarding attorneys' fees awarded in this case to Plaintiffs' attorney, R. Duane Westrup, and related entities. (Doc. 59). The basis of the lien was an unsatisfied judgment in the case of *In re Marriage of Westrup*, Case No: BD513445, in the Superior Court of Los Angeles. (Doc. 59, pg. 2). After the filing of the lien, Ms. Underwood passed away on August 27, 2016. (Doc. 74-1, pg. 8). Ms. Courtney Finney (Mr. Westrup's daughter) was appointed Successor in Interest for Nancy Underwood in the marital proceeding (Doc. 74-1, pgs. 4, 16-17). She is also the sole beneficiary to the Ann Westrup Family Trust, dated October 15, 2015 ("the trust"), which became irrevocable at the time of her death.[6] (Doc. 66-1, pgs. 15, 20; Doc. 74-1, pg. 3). Ms. Finney has filed a notification that she has consulted an attorney, and she wishes to withdraw the lien.[7] (Doc. 63, pg. 4; Doc. 66-1, pgs. pg. 74-1, pgs. 2-9). Accordingly, the Court recommends that the lien (Doc. 59) be released. Cal. Code of Civ. Proc. ("CCP") § 708.440(a) (unless the creditor's money judgment is first satisfied or the lien is released, no settlement or dismissal in the underlying pending action may be entered into without the written consent of the judgment creditor); *See also*, CCP § 377.31 (successor in interest has a right to be substituted in for the decedent); CCP § 377.32 (listing requirements for acting as successor in interest).

### B. Litigation Costs

"[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Sanchez*, 2015 WL 4662636,*20; *Smith v. American Greetings Corporation*, 2016 WL 2909429, *9 (N.D. Cal., May 19, 2016) ("An attorney is entitled to 'recover as part of the award of attorney's fees those out-of-pocket expenses that

---

[6] Pursuant to CCP § 377.11, a decedent's successor in interest means the beneficiary of the decedent's estate.

[7] Ms. Finney substituted Micki Liane Miller as the successor trustee to the trust. (Doc. 66-1, pgs. 71-74). Ms. Miller has also indicated that the lien should be withdrawn. (Doc. 66-1, pgs. 76-77).

would normally be charged to a fee paying client.'") (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)).

Class counsel seek a total of $13,507.84 in expenses. Counsel has submitted an itemized list of expenses. (Doc. 52, pg. 22; Doc. 72). These expenses include court reporter fees for depositions, a filing fee, travel expenses, and mailing costs. (Doc. 58-2, pgs. 43-44; Doc. 72, pgs. 4-5). These expenses are reasonable litigation expenses. Therefore, it will be recommended that Counsel's request for costs in the amount of $13,507.84 be granted.

### C.  Claims Administrator Costs

Plaintiff's request for $15,000.00 as payment to the claims administrator is fair and reasonable. The fee requested comports with, and in fact is lower than other claims administration fees in similar class-action settlements, particularly in light of the number of the notice packets that the claims administrator was required to process. *See, e.g., Rosales,* 2015 WL 4460918, at *3,*31 (approving $25,000.00 in class involving 6,900 potential class members); *Garcia v. Gordon Trucking*, 2012 WL 5364575, at *3 (E.D. Cal. Oct. 31, 2012) (approving $25,000 administrator fee awarded in wage and hour case involving 1,868 potential class members); *Vasquez*, 266 F.R.D. at 484 (approving $25,000 administrator fee awarded in wage and hour case involving 177 potential class members). The Court finds the requested claims administration fee is reasonable given the services provided.

### D.  Representative Service Award

Representative service awards are "fairly typical in class action cases." *Rodriguez,* 563 F.3d at 958-959 (9th Cir. 2009); *see Staton*, 327 F.3d at 977. Granting a service award is discretionary; in doing so the court should consider the time and effort expended by the named plaintiff, and the risk undertaken in serving as named plaintiff. *Staton*, 327 F.3d at 977; *In re Mego*, 213 F.3d at 463. District courts must evaluate incentive awards individually, using "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation. *Stanton*, 327 F. 3d at 977. The court should also consider the amount of the service award as compared to the average recovery of the class. *In re*

*Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947. Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant "reputational risk" by bringing suit against their present or former employers. *Rodriguez*, 563 F.3d at 958–59.

In this case, Plaintiff traveled to and sat for a deposition, provided detailed information about the case, gathered and provided documentary evidence, responded to Kraft Heinz's discovery requests, prepared declarations when needed, reviewed and discussed the settlement at issue, regularly made himself available, and importantly, frequently communicated with his attorneys about the status of the case and how he could assist. *Rodriguez Declaration*, pgs. 4-5 ¶¶ 11-15 (Doc. 52-2, at pgs. 4-5). Plaintiff estimates that he spent well over 40 hours participating in this case. *Id.* at ¶ 11. Plaintiff also suffered more than just financially, including the stigma that the lawsuit placed on him in the community. *Id.* at 12-14. For instance, once word got out that he was the named Plaintiff in this litigation, Plaintiff alleges that he lost good friends that still work for Defendant presumably out of fear of associating with him. *Id.* He also heard that former co-workers have spread rumors and made extremely negative comments about him, and he believes the lawsuit has hurt his chances for future employment within the dairy industry. *Id.*

Given the above, a service award of $10,000.00 is requested for Mr. Rodriguez. This figure is more than the $5,000.00 amount that is presumptively reasonable in this Circuit. *Richardson v. THD at Home Services, Inc.*, 2016 WL 1366952, *13 (E.D. Cal., Apr. 6, 2016) (citing *Harris v. Vector Marketing Corp.*, 2012 WL 381202, *7 (N.D. Cal. Feb. 6, 2012)); *see In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947. However, it is not excessive given the amount of work Mr. Rodriguez performed and the alleged stigma he endured as a class representative. Moreover, the proposed incentive award is not dramatically higher than the average class member award.

For those reasons, it is recommended that Mr. Rodriguez receive the representative service award of $10,000.00.

**VI.   Conclusions and Recommendations**

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiffs' Motion for Final Approval of the Settlement Agreement (Doc. 51) be GRANTED;

2. The terms of the proposed Settlement Agreement be found to be fair, adequate and reasonable and complies with Rule 23(e) of the Federal Rules of Civil Procedure;

3. Plaintiffs' request for certification of the settlement class be granted, and the class defined as all persons, who were employed by Kraft Heinz in California as hourly paid production employees at any time between June 5, 2010, through March 3, 2016, be certified for settlement purposes;

4. For purposes of the settlement, the above-defined settlement class be found to meet all of the requirements of Rule 23(a) and 23(b)(2);

5. The notice provided to settlement class members, as well as the means by which it was provided, be found to constitute the best possible notice practicable under the circumstances, and is in full compliance with the United States Constitution requirements of Due Process and Rule 23 of the Federal Rules of Civil Procedure.  Further, that such notice fully and accurately informed settlement class members of all material elements of the lawsuit and proposed class action settlement, and each member's right and opportunity to object to the proposed class action settlement;

6. Plaintiffs' Motion for Attorneys' Fees, Costs, and Representative Service Award (Doc. 52) be GRANTED IN PART AND DENIED IN PART as follows;

   a. The law firm of Westrup and Associates be appointed as class counsel for the settlement class, and should be awarded $448,549.69 in attorneys' fees and $13,507.84 in costs;

   b. The Notice of Lien filed on August 26, 2016 (Doc. 59) against Duane Westrup and all entities named therein should be released;

7. Plaintiff Jose Rodriguez be appointed as a suitable class representative for the settlement class and be awarded $10,000.00 as a representative service payment;

8. The settlement administrator CPT Group Inc., be awarded $15,000.00;

9.  The Court should direct the parties to effectuate the settlement terms as set forth in the settlement agreement, and the settlement administrator should calculate and pay the claims of the class members in accordance with the terms set forth in the Settlement Agreement (Doc. 35-2, pgs. 14-32);

10. The PAGA penalties of $7,500.00 should be distributed as follows : 75% (approximately $5,625.00) to the Labor and Workforce Development Agency, and the remaining 25% (approximately $1,875.00) paid on a *pro rata* basis to class members;

11. This action be dismissed and judgment entered in accordance with the terms of the settlement agreement (Doc. 35-2, pgs. 14-32); however, the Court shall retain continuing jurisdiction to interpret, implement, and enforce the settlement, and all related orders and judgments.

12. The Clerk of the Court is directed to serve these Findings and Recommendations on the following individuals:

Wail Sarieh, Esq.
Attorney for R. Duane Westrup
Sarieh Law Offices
2107 N. Broadway, Suite 308
Santa Ana, CA 927206

Courtney Noel Finney
Successor in Interest to Nancy Underwood
14500 McKnab Avenue, Apt. 2807
Bellflower, California 90706

Micki Lianne Miller
Current Trustee of the Nancy Ann Westrup Family Trust
444 Ocean Boulevard, Suite 1614
Long Beach, California 90802

Sarah M. Stuppi
Former Guardian ad Litem for Nancy Underwood
Law Offices of Stuppi & Stuppi
1630 N. Main Street, Suite 332
Walnut Creek, California 94596

1
2
3
4

Venessa M. Terzian
Estate Attorney for Nancy Underwood/Lisa Heratin
Terzian Law Partners, APC
727 Foothill Blvd.,
La Canada 91011

5
6
7

Lisa T. Hervatin
Former Trustee of the Nancy Ann Westrup Family Trust
1505 North Broadway
Santa Anna, California 92706

8        These Findings and Recommendations will be submitted to the United States District Judge

9   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14)

10  days after being served with these Findings and Recommendations, the parties may file written

11  objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

12  Findings and Recommendations."  The parties are advised that failure to file objections within the

13  specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on

14  appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d

15  1391, 1394 (9th Cir. 1991)).

16

17  IT IS SO ORDERED.

18     Dated:   **October 4, 2016**                    /s/ *Erica P. Grosjean*
19                                                      UNITED STATES MAGISTRATE JUDGE

20
21
22
23
24
25
26
27
28